UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM D. EATMON,
    Petitioner,

Case No. 1:14-cv-741

vs.

Dlott, J.
Litkovitz, M.J.

WARDEN, NOBLE
CORRECTIONAL INSTITUTION,
    Respondent.

**REPORT AND
RECOMMENDATION**

      Petitioner, an inmate in state custody at the Noble Correctional Institution in Caldwell, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). The parties have filed numerous pleadings and motions in this case. Most importantly, since the commencement of this action in June 2014, respondent filed a return of writ responding to the petition (*see* Doc. 5) and petitioner was permitted to strike two of the four grounds for relief alleged in the original petition and to file additional supplemental pleadings. (*See* Docs. 13, 21; *see also* Docs. 9, 11, 18). In addition, in response to court orders issued in February and November 2015 (*see* Docs. 13, 21), respondent has supplemented the record with the trial transcript and other updated information from the state-court record. (Docs. 14, 22). At this juncture in the proceedings, it appears that the matter is ripe for final disposition.

## I. PROCEDURAL BACKGROUND

### State Trial Proceeding

      In April 2012, the Scioto County, Ohio, grand jury returned an indictment charging petitioner with one count of trafficking in drugs/oxycodone in violation of Ohio Rev. Code § 2925.03(A)(2)/(C)(1)(d); one count of possession of drugs in violation of Ohio Rev. Code §

2925.11(A)&(C)(1)(c); one count of conspiracy to traffic in drugs in violation of Ohio Rev. Code

§ 2923.01/2925.03(A); and one count of possession of criminal tools in violation of Ohio Rev.

Code § 2923.24(A)/2923.24(C). (Doc. 5, Ex. 1). The facts giving rise to the criminal charges

were summarized as follows by the Ohio Court of Appeals, Fourth Appellate District, based on

evidence presented at petitioner's trial:[1]

> In April 2012, Detective Joshua Justice of the Portsmouth Police Department received a telephone call from a confidential informant who had proven reliable previously. After the informant met Eatmon at the Oasis Convenient Mart in Portsmouth, Eatmon later asked the informant if she and her friends sold drugs and advised the informant that he could provide them with drugs. She relayed the information to Detective Justice.
>
> A few days later, the informant received a text message from Eatmon, whose street name was Mike, offering to sell her 100 30 mg. Oxycodone tablets for $23 each. She informed Detective Justice about the planned transaction and advised him that Mike would be at Kmart driving a four-door, blue car with a crack on the back passenger side door.
>
> A short time later police officers spotted Eatmon at Kmart driving the car described by the informant. There was a passenger in the front seat and one in the back seat. The officers stopped the vehicle after it exited Kmart and made a left turn without using a turn signal. A police dog alerted Detective Lee Bower to the presence of an illegal narcotic around the seam between the front and rear passenger side doors. One of the passengers had marijuana; a search of the vehicle uncovered an Advair container with 208 30 mg. Oxycodone tablets in the glove compartment and an aerosol can containing 120 15 mg. Oxycodone tablets in the trunk. The cell phone that the officers ultimately seized was on Eatmon's lap. The text messages between Eatmon and the informant setting up the planned drug transaction were admitted into evidence.

(*Id.*, Ex. 15, pp. 2-3, at PAGEID#: 178-79).

Prior to trial, petitioner's counsel filed a motion to suppress the "drugs and cell phone

---

[1] The Ohio appellate court summarized the facts in a decision issued March 10, 2014 denying petitioner's application under Ohio R. App. P. 26(B) to reopen the direct appeal. (*See* Doc. 5, Ex. 15). 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless the petitioner rebuts the presumption by "clear and convincing evidence." In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted below, the appellate court's findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

records obtained from an automobile operated by the Defendant . . . and seized by the Scioto County Drug Task force on April 24, 2012." (*Id.*, Ex. 3). Following an evidentiary hearing, the trial court overruled the motion. (*See id.*, Ex. 19, p. 28, at PAGEID#: 233).

The matter proceeded to trial before a jury, which found petitioner guilty as charged. (*See id.*, Ex. 4). On July 13, 2012, following a sentencing hearing, the trial court issued a Judgment Entry merging the drug possession and conspiracy charges with the drug trafficking count and sentencing petitioner to an aggregate mandatory eight-year term of incarceration.[2] (*Id.*, Ex. 5).

### State Appeal Proceedings

Assisted by new counsel appointed by the trial court for appeal purposes, petitioner timely appealed to the Ohio Court of Appeals, Fourth Appellate District. (*See* Doc. 5, Exs. 6-7). In the appellate brief filed by counsel on petitioner's behalf, petitioner presented the following claim as the sole assignment of error: "The trial court erred in denying the Appellant's motion to suppress." (*Id.*, Ex. 7). On October 24, 2013, the Ohio Court of Appeals issued a Decision and Judgment Entry overruling the assignment of error and affirming the trial court's judgment. (*Id.*, Ex. 9).

Petitioner did not pursue a timely appeal to the Ohio Supreme Court. On February 6, 2014, he filed a *pro se* notice of appeal and motion for leave to file a delayed appeal to that court. (*Id.*, Exs. 10-11).[3] In his motion, petitioner argued as "cause" for his delay in filing that he was not informed of the Ohio Court of Appeals' direct appeal

---

[2] Specifically, the trial court sentenced petitioner to the following concurrent prison terms: a mandatory term of eight (8) years for the drug trafficking offense charged in Count 1 and a twelve-month term for the possession-of-criminal-tools offense charged in Count 4. (*See* Doc. 5, Ex. 5, at PAGEID#: 82-83).

[3] It appears that the appeal documents were initially "received" by the Clerk of the Ohio Supreme Court on January 27, 2014, but were not "filed" until February 6, 2014. (*See* Doc. 5, Exs. 10-11).

decision until he received a copy of the decision on January 15, 2014. (*Id.*, Ex. 11, at

PAGEID#: 137).  On March 26, 2014, the Ohio Supreme Court denied petitioner's

motion for a delayed appeal without opinion. (*Id.*, Ex. 12).

### Application To Reopen Appeal

On January 13, 2014, *before* petitioner filed his motion for delayed appeal with

the Ohio Supreme Court, petitioner filed a timely *pro se* application under Ohio R. App.

P. 26(B) with the Ohio Court of Appeals, Fourth Appellate District, requesting that the

direct appeal be reopened. (Doc. 5, Ex. 13).  In the application, petitioner claimed that

his appellate counsel was ineffective for failing to raise the following additional

assignments of error on direct appeal:

1.  The evidence was insufficient as a matter of law to support a finding beyond
    a reasonable doubt that Appellant was guilty of drug possession and drug
    trafficking.

2.  Appellant's convictions for drug possession and drug trafficking were against
    the manifest weight of the evidence.

3.  Detective Josh Justice committed perjury at suppression hearing in support of
    probable cause which denied Appellant his liberty.

(*Id.*).  On March 10, 2014, the Ohio Court of Appeals denied petitioner's application on the

ground that petitioner had "not met his burden to establish that he has a colorable claim of

ineffective assistance of counsel." (*Id.*, Ex. 15).

Apparently, petitioner did not pursue an appeal to the Ohio Supreme Court from the

appellate court's ruling. (*See id.*, Brief, p. 4, at PAGEID#: 40).  Instead, on March 11 or 12,

2015, over one year after his reopening application was denied, petitioner filed a motion with the

Ohio Court of Appeals entitled "Appellant's Relief From Judgment Pursuant to Civ.R. 60(B)."

(*See* Doc. 15, at PAGEID#: 820-25; *see also* Doc. 22, Ex. 1).  Petitioner claimed in the motion

that he was not informed of the court's March 10, 2014 denial of his reopening application until December 16, 2014 and that he had yet to receive a copy of the court's decision. (Doc. 15, at PAGEID#: 822). Petitioner requested that the March 2014 decision be reissued "in a manner that will afford Appellant[] the opportunity and time proscribed by SCt.R. 7.01(A)(1), to file a timely notice of appeal" to the Ohio Supreme Court. (*Id.*, at PAGEID#: 823). It appears from the present record that petitioner's motion was never ruled on by the state appellate court. (*See* Doc. 22).

## Federal Habeas Corpus Petition

In June 2014, petitioner commenced the instant federal habeas corpus action. (*See* Doc. 1). In his petition, petitioner stated that his application for reopening of the appeal was still pending before the Ohio Court of Appeals. (*See id.*, at PAGEID#: 3). He also presented the following grounds for relief:

> **Ground One:** Petitioner's right to be free [from] unreasonable search and seizure as guaranteed him in the Fourth Amendment [of] the U.S. Constitution w[as] violated by police at a traffic stop.
>
> **Supporting Facts:**
> 1. The trial court erred in denying the Petitioner's motion to suppress evidence unreasonably seized by illegal search.
> 2. The state courts applied an unreasonable determination of clearly established federal law to justify illegal search/seizure/an arrest inc[i]dent of petitioner.
> 3. The alleged hearsay statements of a[] confidential informant had no indicia of reliability or trustworthiness to warrant "Terry stop."
>
> **Ground Two:** The use of information by confidential informant which the State relied [on] to circumvent warrant requirement violated the Petitioner's 4th, 6th, and 14th Amendment rights guaranteed under the U.S. Constitution.
>
> **Ground Three:** Petitioner received ineffective assistance of appella[te] counsel as guaranteed him by the 6th Amendment to the U.S. Constitution.
>
> **Supporting Facts:** Appella[te] counsel failed to raise num[]erous constitutional violations that occurred in this case (see attached 26(B)).

**Ground Four:** Petitioner was denied due process and equal protection of law at trial. . . .

(*Id.*, at PAGEID#: 5, 7, 8, 10).

Respondent filed a return of writ responding to the four claims alleged in the original petition. (*See* Doc. 5). Thereafter, petitioner filed a motion to strike Grounds Two and Four, which was granted. (*See* Doc. 11; Doc. 13, pp. 2, 4, at PAGEID#: 285, 287). Petitioner was permitted, however, to file an "amended supplemental cause of action" in order "to supplement his pleadings with a 'New Rule'" regarding warrant requirements that was announced by the United States Supreme Court on June 25, 2014 in *Riley v. California*, __ U.S. __, 134 S.Ct. 2473 (2014). (*See* Doc. 9; Doc. 13, pp. 2, 4, at PAGEID#: 285, 287). Petitioner filed a second pleading entitled "amended supplemental cause of action" on August 24, 2015. (Doc. 18). Respondent has responded to both of petitioner's pleadings pertaining to the "amended supplemental cause of action," and petitioner has filed a "traverse" brief in reply to one of respondent's responses. (Docs. 10, 12, 20).

## II. OPINION

### A. The Fourth Amendment Claim Alleged In Ground One Is Barred From Review And Petitioner's "Amended Supplemental Cause Of Action" Lacks Merit

In Ground One of the petition, petitioner asserts a Fourth Amendment claim challenging the trial court's denial of his motion to suppress "drugs and cell phone records obtained from an automobile operated by [petitioner] . . . and seized by the Scioto County Drug Task force on April 24, 2012." (*See* Doc. 5, Ex. 3; *see also* Doc. 1, at PAGEID#: 5). Petitioner contends that the evidence should have been suppressed because it was seized during an unreasonable stop and search of the automobile in violation of his Fourth Amendment rights. (Doc. 1, at PAGEID#: 5).

As a threshold matter, although petitioner challenged the denial of his suppression motion

on direct appeal to the Ohio Court of Appeals, it appears that he may have waived any Fourth Amendment claim because he committed a procedural default by failing to pursue a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' direct appeal decision. In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A claim is deemed fairly presented only if the petitioner presented his constitutional claims for relief to the state's highest court for consideration. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).

It is also well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See, e.g., Harris v. Reed,* 489 U.S. 255, 260-62 (1989). The Sixth Circuit has held that the Ohio Supreme Court's unexplained entry denying a motion for leave to file a delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar review of a federal habeas corpus petition. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004) (per curiam); *see also Baker v. Bradshaw,* 495 F. App'x 560, 565 (6th Cir. 2012) (citing *Bonilla* in pointing out that "[t]his court has held that violation of . . . the timeliness requirements for an appeal to the Ohio Supreme Court . . . constitute[s] adequate and independent state grounds to preclude hearing an untimely claim on the merits").

7

Here, as in *Bonilla* and *Baker*, because petitioner failed to pursue a timely appeal to the Ohio Supreme Court and the Ohio Supreme Court denied petitioner leave to file a delayed appeal, the state's highest court never considered the merits of petitioner's Fourth Amendment claim. Therefore, this Court is barred from considering the ground for relief unless petitioner "can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Bonilla,* 370 F.3d at 497 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Petitioner has averred as "cause" for his default that he was not informed of the Ohio Court of Appeals' direct appeal decision until he received a copy of the decision on January 15, 2014. (*See* Doc. 5, Ex. 11, at PAGEID#: 137). Petitioner's argument is suspect given that he filed an application for reopening of the direct appeal with the Ohio Court of Appeals on January 13, 2014, two days *before* he allegedly first learned about the direct appeal decision that had issued in October 2013. Nevertheless, even assuming in petitioner's favor that cause exists for his failure to perfect a timely appeal to the Ohio Supreme Court, federal habeas review of petitioner's Fourth Amendment claim is still precluded under the Supreme Court's decision in *Stone v. Powell,* 428 U.S. 465 (1976).

As respondent has pointed out in the return of writ (*see* Doc. 5, Brief, pp. 12-13, at PAGEID#: 58-59), the Supreme Court held in *Stone* that federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the prisoner had a full and fair opportunity to litigate such a claim in the state courts and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone*, 428 U.S. at 494-95. The Sixth Circuit has developed a two-step inquiry in assessing whether *Stone* applies to preclude federal habeas review of Fourth Amendment claims. *Riley v.*

*Gray,* 674 F.2d 522, 526 (6th Cir. 1982); *see also Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000). Under that inquiry, the federal habeas corpus court must determine (1) whether the State has provided a procedural mechanism through which, in the abstract, the petitioner could raise a Fourth Amendment claim, and (2) whether the petitioner's presentation of the Fourth Amendment claim was in fact frustrated because of a failure of that mechanism. *Id.*

In *Riley,* the Sixth Circuit held that by providing for the filing of a pretrial motion to suppress and the opportunity to directly appeal any ruling denying a suppression motion, Ohio has a mechanism in place for the resolution of Fourth Amendment claims, which "is, in the abstract, clearly adequate." *Riley,* 674 F.2d at 526; *see also Loza v. Mitchell,* 705 F. Supp.2d 773, 860 (S.D. Ohio 2010). Therefore, the determination whether *Stone* applies turns solely on the resolution of the second *Riley* inquiry. *See Rivera v. Warden, Chillcothe Corr. Inst.,* No. 1:11cv690, 2012 WL 6756254, at *6 (S.D. Ohio Aug. 20, 2012) (Wehrman, M.J.) (Report & Recommendation) (citing *Hillman v. Beightler,* No. 5:09cv2538, 2010 WL 2232635, at *5 (N.D. Ohio May 26, 2010)), *adopted,* 2013 WL 25771 (S.D. Ohio Jan. 2, 2013) (Dlott, J.).

Courts have consistently held that the "relevant inquiry" in resolving the second question posed in *Riley* is whether the "habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided" by the state courts. *Rivera, supra*, 2012 WL 6756254, at *8 (quoting *Wynne v. Renico,* 279 F. Supp.2d 866, 892 (E.D. Mich. 2003)).[4]

> As long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of procedures that are "suitably crafted" to test for possible Fourth Amendment violations, a federal habeas court does not have the power, under *Stone,* to "second-guess the accuracy of the state courts' resolution

---

[4]The district court later supplemented its opinion in *Wynne* on another issue, which was determined to be sufficiently meritorious to justify the granting of a conditional writ of habeas corpus. *See Wynne v. Renico,* 595 F. Supp.2d 775 (E.D. Mich. 2009). The Sixth Circuit later reversed the district court's revised judgment granting habeas corpus relief based on that other ground. *Wynne v. Renico,* 606 F.3d 867 (6th Cir. 2010).

> of those claims.". . . Thus, a "mistaken outcome" of a suppression hearing that
> has been conducted in a state trial court, standing alone, does not deny a habeas
> petitioner's opportunity to fully and fairly litigate his Fourth Amendment claims
> . . . . Thus, even "potentially meritorious Fourth Amendment claims" are barred
> by *Stone* on habeas review if the petitioner had a full and fair opportunity to
> litigate his claims in the state courts.

*Wynne,* 279 F. Supp.2d at 892 (quoting *Sanna v. Dipaolo,* 265 F.3d 1, 8-9 (1st Cir. 2001), and

*Deputy v. Taylor,* 19 F.3d 1485, 1491 (3rd Cir. 1994)); *see also Hillman, supra,* 2010 WL

2232635, at *5 (quoting *Cabrera v. Hinsley,* 324 F.3d 527, 531-32 (7th Cir. 2003)) ("Absent a

subversion of the hearing process, we will not examine whether the judge got the decision right.

. . . '[F]ull and fair' guarantees the right to present one's case, but it does not guarantee a

correct result."); *Brown v. Berghuis*, 638 F. Supp.2d 795, 812 (E.D. Mich. 2009) (and cases cited

therein) ("Under *Stone*, . . . the correctness of the state courts' conclusions is simply irrelevant.").

        The Sixth Circuit has stated in an unpublished decision that the second *Riley* inquiry is

"not meant to be a case by case review of state court determinations," but rather "is a review of

whether the state provided an adequate mechanism to address Petitioner's Fourth Amendment

claims." *Abdul-Mateen v. Hofbauer,* No. 98-2323, 2000 WL 687653, at *3 (6th Cir. May 19,

2000). In *Abdul-Mateen*, the court recognized that an exception was carved out in *Riley* for

"egregious error in the application of fourth amendment principles" amounting to a refusal by the

state courts to consider or apply controlling Supreme Court precedents. *See id.* (quoting *Riley,*

674 F.2d at 526, in turn citing *Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir. 1978)). In *Riley,*

the Sixth Circuit explained that when an "egregious error" of such "magnitude and nature" is

present, as it was in *Gamble*, "a federal habeas court *might* be justified in concluding that an

opportunity for a full and fair hearing had not been afforded the petitioner." *Riley,* 674 F.2d at

526 (emphasis added). In a subsequent decision, the Sixth Circuit rejected a petitioner's

argument that an egregious misapplication of a controlling Supreme Court precedent also could

10

justify such a conclusion. *Gilbert v. Parke,* 763 F.2d 821, 824 (6th Cir. 1985). The court reasoned: "This court in *Riley* declined to adopt the portion of *Gamble* permitting federal review of egregious substantive errors committed by state courts on Fourth Amendment claims. . . . Since the [state] courts provided Gilbert a full and fair opportunity to litigate his Fourth Amendment claims, second-guessing the [state] Supreme Court on the merits would be inconsistent with *Stone*." *Id.*

Here, as in *Gilbert*, the record does not reflect the magnitude or type of "egregious error" referred to in *Riley* as possibly justifying a finding that the opportunity for a full and fair hearing was thwarted. *Cf. Bergholz v. McMackin,* No. 89-3740, 1990 WL 223036, at *3 (6th Cir. Dec. 27, 1990) (per curiam) (in ruling that *Stone* foreclosed the petitioner's Fourth Amendment claim, the Sixth Circuit pointed out that "even if the state courts were in error in applying substantive law regarding 'seizures' under the Fourth Amendment, the state courts did not refuse to follow applicable precedent"). Indeed, to the contrary, it is clear from the record that petitioner was able to fully and fairly litigate his Fourth Amendment claim in the state courts.

First, petitioner was able to present his claim to the trial court by way of a suppression motion. (*See* Doc. 5, Ex. 3). Before ruling on the motion, the trial court held a hearing where defense counsel was provided the opportunity to cross-examine the State's witnesses, to present evidence on petitioner's behalf and to assert arguments in support of the suppression motion. (*See id.*, Ex. 19). Second, after the trial court denied the suppression motion, petitioner was not prohibited from challenging the trial court's decision on appeal. Indeed, petitioner availed himself of the opportunity by arguing as the sole assignment of error that the evidence seized from the car should have been suppressed because petitioner's "Fourth Amendment right against unreasonable search and seizure" was violated when the police "seized, arrested and searched

11

[petitioner] without a warrant and without circumstances constituting a valid and recognized exception to the warrant requirement." (*Id.*, Ex. 7).  The Ohio Court of Appeals considered the Fourth Amendment issues under applicable precedents then in effect in determining that petitioner's claim lacked merit.  (*See id.*, Ex. 9).

By filing a pretrial motion to suppress and taking a direct appeal to the Ohio Court of Appeals from the denial of the suppression motion, petitioner used Ohio's procedural mechanism deemed adequate for the full and fair litigation of a Fourth Amendment claim.  *Cf. Loza,* 705 F. Supp.2d at 860 (and cases cited therein).  Therefore, although petitioner missed the deadline for filing a further appeal to the Ohio Supreme Court, his claim was not thwarted by any failure in that mechanism.

In his "supplemental amended cause of action," petitioner relies on the Supreme Court's *Riley* decision, which was announced *after* petitioner's direct appeal and the Ohio Supreme Court's denial of petitioner's delayed appeal motion, as requiring review of the merits of his Fourth Amendment claim, at least as it pertains to the admission at trial of his cell phone records. (*See* Doc. 18).  In *Riley*, 134 S.Ct. at 2493, the Supreme Court held that "a warrant is generally required before [a search of information contained in a cell phone], even when the cell phone is seized incident to arrest."  *See also United States v. Lewis*, 615 F. App'x 332, 337-38 (6th Cir.) (quoting *Riley*), *cert. denied*, 136 S.Ct. 423 (2015).  Petitioner contends that the decision applies to his case because his conviction was not "final" when the Supreme Court announced its decision in *Riley* on June 25, 2014.  (*Id.*, pp. 4-5, at PAGEID#: 841-42).

There are a number of problems with petitioner's argument.  First, the Supreme Court's June 25, 2014 decision in *Riley* does not change the fact that *Stone* applies to bar review of petitioner's Fourth Amendment claim in this federal habeas proceeding.

Second, petitioner has waived the new claim because he never raised it to the state courts. In order to satisfy the fair presentation requirement, the claims asserted in the federal habeas petition must be based on the same facts and same legal theories that were presented to the state courts. *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir. 2012) (citing *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)). Here, although petitioner asserted other arguments in support of his claim of a Fourth Amendment violation to the state trial court and to the Ohio Court of Appeals on direct appeal, he never presented to those courts the specific issue raised to and addressed by the Supreme Court in *Riley*.

Third, contrary to petitioner's contention, the Supreme Court's *Riley* decision does not apply here because, as respondent has pointed out in a pleading responding to petitioner's "amended supplemental cause of action" (*see* Doc. 20, p. 2, at PAGEID#: 864), petitioner's conviction became final by the conclusion of direct review in December 2013, months before the Supreme Court announced its decision in *Riley*. Indeed, even assuming solely for the sake of argument that petitioner's subsequent motion for delayed appeal to the Ohio Supreme Court extended the direct review period, his conviction would have still been rendered final (even after taking into account the 90-day period for filing a petition for certiorari to the United States Supreme Court from the Ohio Supreme Court's March 26, 2014 decision denying the delayed appeal motion) on June 24, 2015, one day before the Supreme Court announced its decision in *Riley*.

Finally, *Riley* is distinguishable from the case-at-hand because the trial transcript reflects that in contrast to the *Riley* scenario, police officers in this case actually obtained a warrant, which was required under Ohio law, before searching for information contained in the cell phone

13

that was confiscated from petitioner on his arrest. (*See* Doc. 14, Trial Tr. 91-92, at PAGEID#: 383-84).

Accordingly, in sum, the undersigned concludes that the Fourth Amendment claim alleged in Ground One of the petition, which was defaulted in the state courts, is barred from review under the Supreme Court's *Stone* decision. Federal habeas review is prohibited because petitioner was provided a full and fair opportunity in the state courts to litigate the claim, and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Cf. Stone*, 428 U.S. at 494-95. To the extent that petitioner has asserted new arguments based on the Supreme Court's June 25, 2014 decision in *Riley*, *Stone* still applies to bar review of the Fourth Amendment claim; petitioner procedurally defaulted and has waived any claim based on the new Supreme Court decision because he never presented the issues addressed in that decision to the state courts; and, in any event, *Riley* does not apply to the case-at-hand because the decision was announced after petitioner's conviction became final by the conclusion of direct review and the record reflects that in contrast to *Riley*, a warrant was obtained before a search was conducted to obtain records from petitioner's cell phone. Therefore, petitioner is not entitled to relief based on the Fourth Amendment claims alleged in Ground One of the petition and in petitioner's "amended supplemental cause of action" pleadings.

## B. Petitioner Is Not Entitled To Habeas Relief Based On The Remaining Ineffective-Assistance-Of-Appellate-Counsel Claims Alleged In Ground Three Of The Petition

In Ground Three of the petition, petitioner alleges that his appellate counsel was ineffective for failing to assert claims challenging the sufficiency and weight of the evidence and the suppression-hearing testimony of a State witness as assignments of error on direct appeal to the Ohio Court of Appeals. (*See* Doc. 1, at PAGEID#: 8, 27-37).

As an initial matter, an argument can be made that, like the claim alleged in Ground One,

14

petitioner's ineffective-assistance-of-appellate-counsel claims are barred from review because petitioner did not present them to the Ohio Supreme Court for consideration.  As respondent has pointed out in the return of writ (*see* Doc. 5, Brief, p. 9, at PAGEID#: 55), although petitioner presented the claims to the Ohio Court of Appeals by way of a timely Rule 26(B) application to reopen his appeal, he committed a procedural default because he did not pursue a timely appeal to the Ohio Supreme Court from the denial of his reopening application, and delayed appeals to the state's highest court are not permitted in Rule 26(B) actions.  *See* Ohio S.Ct.Prac. R. 7.01(A)(4)(c).  However, because petitioner has argued that he never received a copy of the appellate court's decision and was not informed of the March 10, 2014 denial of his reopening application until December 16, 2014, months after the deadline for perfecting a timely appeal to the state's highest court had passed, the undersigned will assume in petitioner's favor that cause exists for his default and will address the claims alleged in Ground Three on the merits.

   This Court's review of petitioner's claims is limited.  Under § 2254(d), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

   "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v.*

*Taylor,* 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an

'unreasonable application' of clearly established federal law when 'the state court identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies

that principle to the facts of the prisoner's case.'"  *Id.* at 599-600 (quoting *Williams,* 529 U.S. at

413).

      The statutory standard, established when the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet.  *Id.* at 600.

As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards.  *See, e.g., Cullen v. Pinholster,* [563] U.S. [170], 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court).  It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . .  This is a "substantially higher threshold.". . .  To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* [562] U.S. [86, 98-99], 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).  The Supreme Court has further held that when a state court rules

against a defendant in an opinion that "addresses some issues but does not expressly address the

federal claim in question," the federal habeas court must presume, subject to rebuttal, that the

federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of

review" set out in § 2254(d).  *See Johnson v. Williams,* __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

      Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete

bar on federal-court relitigation of claims already rejected in state proceedings" and "preserves

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree

that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 562 U.S. at 102. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte*, 654 F.3d at 600 (citing *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins*, 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams*, 529 U.S. at 412); *see also White v. Woodall*, __ U.S. __, 134 S.Ct. 1697, 1702 (2014) (quoting *Howes v. Fields*, __ U.S. __, 132 S.Ct. 1181, 1187 (2012) (internal citation and quotation marks omitted)) ("[C]learly established Federal law' for purposes of § 2254(d)(1) includes 'only the holdings, as opposed to the dicta, of this Court's decisions."). Decisions by lower courts are relevant only "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

In this case, the Ohio Court of Appeals was the only state court to issue a reasoned

decision addressing the merits of the ineffective-assistance-of-appellate-counsel claims that were presented in petitioner's reopening application. The court rejected them, reasoning in pertinent part as follows:

> The two-pronged analysis in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is the appropriate standard to assess whether a defendant has raised a "genuine issue" as to the ineffective assistance of counsel in a request to reopen an appeal under App.R. 26(B)(5). . . . In order to establish ineffective assistance, Eatmon must prove that his counsel was deficient for failing to raise the issues he now presents and there was a reasonable probability of success had he presented those claims on appeal. . . .
>
> In determining whether Eatmon has met his burden, we indulge the strong presumption that his appellate counsel's conduct falls within the wide range of reasonable professional assistance. . . . "[A]ppellate counsel need not raise every possible issue in order to render constitutionally effective assistance." . . . In addition, appellate counsel is not required to argue assignments of error that are meritless. . . .
>
> ****
>
> A.  Sufficiency of the Evidence
>
> In his first proposed assignment of error, Eatmon asserts that the evidence adduced at trial was insufficient to support his convictions for drug possession and drug trafficking. In reviewing a sufficiency challenge, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. . . . The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact, so a reviewing court merely assesses whether the evidence, if believed, supports the convictions....
>
> Eatmon was found guilty of aggravated drug possession in violation of R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." He was also found guilty of drug trafficking in violation of R.C. 2925.03(A)(2), which provides that "[n]o person shall knowingly *** [p]repare for shipment, transport, deliver, prepare for distribution, or distribute a controlled substance ***, when the offender knows or has reasonable cause to believe that the controlled substance *** is intended for sale or resale by the offender or another person."
>
> Eatmon claims that his convictions for these drug offenses were not supported by sufficient evidence because he did not possess the Oxycodone tablets that were

18

found in the glove compartment of the car, which were in closer proximity to the front-seat passenger than the driver, i.e. him.

R.C. 2925.01(K) defines "possession" as "having control over a thing or substance, but may not be inferred from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession." R.C. 2901.21(D)(1).

Possession may be either actual or constructive. . . . "Actual possession exists when the circumstances indicate that the individual has or had an item within his immediate physical possession," whereas "[c]onstructive possession exists when an individual is able to exercise dominion or control of an item, even if the individual does not have the item within his immediate physical possession.". . . Dominion and control can be established by circumstantial evidence. . . .

A defendant's mere presence in an area where drugs are located does not conclusively establish constructive possession of drugs. But it may constitute some evidence, which when coupled with another factor probative of dominion or control over the contraband, establishes constructive possession. . . . For example, when the defendant is the driver of a car and drugs are within the driver's easy access, constructive possession may occur. . . .

The evidence submitted at trial established that Eatmon drove the car and had easy access to 208 30 mg tablets of Oxycodone in an Advair container in the glove compartment. Moreover, the testimony of Detective Justice and the informant as well as Eatmon's own text messages from his cell phone to the informant indicated that he offered to sell 100 of the 30 mg Oxycodone tablets to the informant. These facts provide additional evidence of his possession of the drugs, as well as his transportation of the drugs to Kmart to sell them. Therefore, there was sufficient evidence to support Eatmon's convictions for aggravated drug possession and drug trafficking. Eatmon cannot establish a colorable claim that appellate counsel was ineffective for failing to raise this meritless issue on appeal.

B. Manifest Weight of the Evidence

In his second proposed assignment of error, Eatmon asserts that his convictions for aggravated drug possession and drug trafficking were against the manifest weight of the evidence.

. . . .In reviewing whether a conviction is against the manifest weight of the evidence, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving evidentiary conflicts, the jury clearly lost its way and created a manifest

miscarriage of justice that justifies reversal and a new trial. . . .

Again, Eatmon claims that the evidence of his possession of the Oxycodone was lacking. But based on the same evidence we highlighted in our review of his sufficiency claim, we cannot conclude that this is an exceptional case in which the evidence weighs heavily against the convictions. . . . Eatmon's convictions were not against the manifest weight of the evidence, and his appellate counsel was not ineffective for failing to raise this meritless issue on appeal.

C.   Perjury

In his third proposed assignment of error, Eatmon claims that Detective Justice committed perjury at the suppression hearing, which denied Eatmon his due process. Eatmon points to an inconsistency in Detective Justice's testimony – he testified at the suppression hearing that the informant told him that Eatmon showed her a bag of pills when Eatmon offered to sell them a few days before his arrest, but Detective Justice testified at trial that the informant never told him that she saw Eatmon with the pills.

Eatmon's claim lacks merit because "mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." . . . Moreover, given the overwhelming evidence against Eatmon, including his own text messages offering to sell Oxycodone to the informant, the jury was entitled to credit the testimony of Detective Justice and the informant. Eatmon's appellate counsel was not ineffective for failing to raise this meritless issue on appeal.

**** 

Therefore, because Eatmon's proposed assignments of error have no arguable merit, he has failed to establish a genuine issue as to whether he was deprived of the effective assistance of appellate counsel. Accordingly, we deny Eatmon's App.R. 26(B) application for reopening.

(Doc. 5, Ex. 15, pp. 4-9, at PAGEID#: 180-85) (state case citations omitted).

As a threshold matter, the Ohio Court of Appeals' adjudication of petitioner's ineffective-assistance-of-appellate-counsel claims is not contrary to clearly established federal law as determined by the Supreme Court. The state appellate court correctly identified and applied the two-prong standard of review enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), when addressing the merits of those claims. Therefore, in order to obtain relief in this case, petitioner must demonstrate that the Ohio Court of Appeals' disposition of the issues

involved an unreasonable application of *Strickland*.

As the state appellate court recognized, to establish that his appellate counsel was ineffective under *Strickland*, petitioner must demonstrate both (1) his trial attorney's conduct was constitutionally deficient; and (2) counsel's deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687. Under the first prong of the *Strickland* test, petitioner must show that appellate counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. Judicial scrutiny must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time the conduct occurred. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that the challenged conduct fell within the wide range of reasonable professional assistance. *Id.*

Appellate counsel is not constitutionally ineffective under this prong merely because he declines to raise a non-frivolous issue on appeal that was requested by the defendant. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (holding that an "indigent defendant [does not have] a constitutional right to compel appointed counsel to press nonfrivolous points [on appeal] requested by the client"). As the Supreme Court stated in *Barnes*, 463 U.S. at 754:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

"Th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52); *see also Coleman v. Mitchell*, 268 F.3d 417, 430-31 (6th Cir. 2001). It is still possible

to bring a *Strickland* claim based on counsel's failure to raise a particular claim on direct appeal; however, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins,* 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)); *see also Wilson v. Hurley,* 108 F. App'x 375, 379 (6th Cir. 2004).

To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the result of the direct appeal proceeding would have been different. *See Strickland,* 466 U.S. at 694. Petitioner has met his burden if he shows that the result of the appeal would "reasonably likely have been different absent the errors." *Id.* at 695.

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective-assistance-of-counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id*. at 697.

In this federal habeas action, the Court must employ a "doubly deferential" standard of review in evaluating the reasonableness of the Ohio Court of Appeals' adjudication of petitioner's claim under *Strickland. See Woods v. Daniel,* __ U.S. __, 135 S.Ct. 1372, 1376 (2015); *Burt v. Titlow,* __ U.S. __, 134 S.Ct. 10, 13 (2013); *Premo v. Moore,* 562 U.S. 115, 122-23 (2011) (quoting *Harrington,* 562 U.S. at 104-05); *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009). Although "[s]urmounting *Strickland*'s high bar is never an easy task," *Harrington,* 562 U.S. at 105 (quoting *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010)), the AEDPA requires that a second layer of deference be accorded the state courts' adjudication of ineffective assistance of counsel claims. The Supreme Court has explained:

Even under *de novo* review, the [*Strickland*] standard for judging counsel's representation is a most deferential one. . . .

**\*\*\*\***

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so. . . . The *Strickland* standard is a general one, so the range of reasonable applications is substantial. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 689, and *Knowles*, 556 U.S. at 123); *see also Premo*, 562 U.S. at 122-23. Therefore, on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101.

Upon review of the trial transcript, the undersigned concludes that it was reasonable for the Ohio Court of Appeals to determine that the proposed additional assignments of error involved "meritless issues" and, therefore, that petitioner had failed to establish a genuine issue as to whether he was deprived of the effective assistance of appellate counsel.

First, to the extent that petitioner contends that his counsel should have asserted claims challenging the sufficiency and weight of the evidence supporting his convictions for drug possession and trafficking, it was reasonable for the Ohio Court of Appeals to find that enough evidence was presented to establish that petitioner was in constructive possession of the oxycodone found in the glove compartment and trunk of the automobile that he was driving. *Cf. Reed v. Warden, Chillicothe Corr. Inst.*, No. 2:11cv263, 2012 WL 511481, at \*4 (S.D. Ohio Feb. 15, 2012) (Report & Recommendation) (holding that the State "presented sufficient evidence for

reasonable minds to find that appellant constructively possessed the crack cocaine in the truck of the car" that he drove at one point and was the passenger in when the car was stopped by police because, under Ohio law, "[w]hen a person is the driver or a passenger in a car in which drugs are within easy access, a trier of fact may find constructive possession"), *adopted*, 2012 WL 870727 (S.D. Ohio Mar. 13, 2012); *Woodson v. Smith,* No. 5:09cv2803, 2011 WL 611626, at *1-2 (N.D. Ohio Feb. 11, 2011) (holding that sufficient evidence was presented to establish that the driver of the car possessed a "substantial amount of crack cocaine packaged for sale" that was found in the center console of the vehicle because under Ohio law, "when one is the driver of a car in which drugs are within easy access of the driver, constructive possession may be established"); *State v. Fry*, No. 03CA26, 2004 WL 2428439, at *10 (Ohio Ct. App. Oct. 26, 2004) (and Ohio cases cited therein) (concluding that the defendant's drug convictions were not against the manifest weight of the evidence in part because the defendant was the driver of the car in which the drugs were found and was thus in "possession of the keys to the automobile," which is "a strong indication of control over the automobile and all things found in or upon the automobile") (internal quotation marks omitted); *see also State v. Brooks,* No. 5-11-11, 2012 WL 5507092, at *12 (Ohio Ct. App. Nov. 13, 2012) ("The fact that a defendant possesses the keys to an automobile is a strong indication that he possesses the automobile and the items inside."); *State v. Wharton*, No. 09CA3132, 2010 WL 3835644, at *7 (Ohio Ct. App. Sept. 30, 2010) (same).

In addition, other evidence was presented at trial to establish petitioner's guilt. Detective Justice testified that he received a phone call from a confidential informant, who had "proven reliable in at least seven cases" that had resulted in convictions. (Doc. 14, Trial Tr. 72, at PAGEID#: 364). The informant told Justice that she spoke with a "guy . . . from Detroit, a black

male, driving a newer four door blue car, and was down here selling oxy's, offering to sale (sic) in quantity." (*Id.*). On the date of petitioner's arrest, the confidential informant informed Justice that the subject, who went by the street name "Mike," had "offered to sell [her] 100 oxy 30's at $23.00 a piece" and that he was "going to be at Kmart." (*Id.*, Trial Tr. 72-73, at PAGEID#: 364-65). The confidential informant identified petitioner as the person from Detroit who had approached her about drugs, which led to her contacting Justice. (*See id.*, Trial Tr. 155-57, at PAGEID#: 447-49). The informant corroborated Justice's account of events leading up to the stop and search of the car petitioner was driving, adding that petitioner told her that "he had a deal for me" and "said he could s[ell] me 100 'M' box 30 milligrams for $23.00 a piece." (*Id.*, Trial Tr. 157, 159, at PAGEID#: 449, 451). The informant explained that an "M" box is "a round blue pill that's Oxycodone with an 'M' on one side." (*Id.*, Trial Tr. 159, at PAGEID#: 451). The oxycodone in the Advair container found in the glove compartment of the car matched the description of pills that the confidential informant claimed petitioner had offered to sell to her. (*See id.*, Trial Tr. 85, 230, at PAGEID#: 377, 522). Moreover, the confidential informant's account of her communications with petitioner was corroborated by the text messages that were retrieved from the cell phone that Justice saw in petitioner's lap when the car was stopped and searched. (*See id.*, Trial Tr. 80-81, 101-02, at PAGEID#: 372-73, 393-94, 767-73). As the Ohio Court of Appeals reasonably found, these facts provide additional evidence of petitioner's possession and trafficking of the drugs that were found in the car he was driving. Therefore, in light of all the evidence presented at trial to establish petitioner's guilt on the drug possession and trafficking charges, it was eminently reasonable for the Ohio Court of Appeals to conclude that petitioner had not demonstrated a colorable claim of ineffectiveness based on his appellate counsel's failure to present assignments of error challenging the sufficiency and weight

25

of the evidence supporting petitioner's convictions on those counts.

Finally, to the extent that petitioner contends that his appellate counsel should have presented a claim that Detective Justice committed perjury at the pretrial hearing on petitioner's suppression motion, it was reasonable for the Ohio Court of Appeals to find that the record does not support such a claim of intentional misconduct.  At the suppression hearing, Justice testified that the confidential informant had informed him that Mike had shown her a bag of Oxycodone pills that he was offering to sell.  (*Id.*, Trial Tr. 4, 15, at PAGEID#: 296, 307).  Justice also suggested on cross-examination that he "assum[ed]" a sale had been set up for Kmart when the confidential informant informed him that "Mike had offered to sell her a hundred 30's for $23.00 a piece, and he was going to Kmart."  (*Id.*, Trial Tr. 14, at PAGEID#: 306).  At trial, Justice could not recall whether the confidential informant had told him she "saw the pills" offered by petitioner. (*Id.*, Trial Tr. 129-30, at PAGEID#: 421-22).  The confidential informant testified that she never saw one pill on petitioner.  (*Id.*, Trial Tr. 176, at PAGEID#: 468).  She also testified that when Justice asked her "to set up a buy with petitioner," she responded as follows:

> I actually told Mr. Justice that I didn't really want to do that, because I really didn't want to have to be put on the stand, and I asked him if there was any way he could do a routine traffic stop and get him that way, and [Justice] asked me to find out where he was.  I found out where he was.  Mr. Eatmon told me where he was, and I got back in contact with Mr. Justice, and they got him shortly after that.

(*Id.*, Trial Tr. 177, at PAGEID#: 469).

As the Ohio Court of Appeals reasonably found, the minor inconsistencies between Justice's testimony at the suppression hearing and Justice's and the informant's trial testimonies do not give rise to the inference that Justice lied at the suppression hearing in order to ensure that petitioner's suppression motion would be denied.  Justice may well have believed at the time he gave his pretrial testimony that the confidential informant had told him she was shown pills by

petitioner.  Moreover, at the suppression hearing, Justice merely expressed some confusion about whether a sale was going to take place at Kmart when he first observed the vehicle at Kmart, where the confidential informant had said petitioner was going to show up.  The crucial information that Justice relayed at the hearing to establish probable cause for the stop of the vehicle remained consistent and was corroborated by the confidential informant's trial testimony as well as the text messages obtained from petitioner's cell phone.  Therefore, it was not unreasonable for the Ohio Court of Appeals to find that petitioner's proposed perjury claim was meritless or, in any event, was not reasonably likely to succeed if raised as an assignment of error on direct appeal.  Because it is highly unlikely that the outcome of the appeal would have been different if the claim had been asserted as an assignment of error, it was also reasonable for the Ohio Court of Appeals to conclude that petitioner failed to establish that his appellate counsel was ineffective.

Accordingly, in sum, upon thorough review of the trial record, and under the double-layer deferential standard of review that must be applied by this Court, the undersigned concludes that the Ohio Court of Appeals' adjudication of the ineffective-assistance-of-appellate-counsel claims alleged in Ground Three of the petition is neither contrary to nor an unreasonable application of *Strickland*.  Petitioner has not shown that the state court's rejection of his claims of constitutional error by counsel "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *See Harrington*, 562 U.S. at 103.  Therefore, petitioner has not demonstrated that he is entitled to habeas corpus relief based on such claims.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

(Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the remaining claims alleged in Grounds One and Three of the petition because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: _3/1/16_

_Karen L. Litkovitz_
Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WILLIAM D. EATMON,
      Petitioner,

      vs.

WARDEN, NOBLE
CORRECTIONAL INSTITUTION,
      Respondent.

Case No. 1:14-cv-741

Dlott, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc